HUNTER, JR., ROBERT N., Judge.
*435 Robert A. Izydore ("Plaintiff") appeals from a 22 July 2014 order dismissing his amended complaint asserting seven causes of action and *436 seeking injunctive relief, compensatory and punitive damages, and a declaration he be entitled to Professor Emeritus status from the North Carolina Central University ("NCCU"). After careful review, we affirm the trial court's order in its entirety.
I. Factual & Procedural History
On 12 February 2014, Plaintiff, a retired university professor, filed an amended complaint against Alade Tokuta ("Professor Tokuta"), in his individual and official capacity; Caesar Jackson ("Professor Jackson"), in his individual and official capacity; Provost Bernice Johnson ("Provost Johnson"), in her *344 individual and official capacity; the State of North Carolina ("State"); and NCCU (collectively, "Defendants"), arising from Defendants' decision to deny Plaintiff's nomination for Professor Emeritus status. Plaintiff's complaint reveals the following facts.
Plaintiff taught chemistry at NCCU for thirty-eight years before retiring in September 2009. In May 2009, Dr. John Meyers and Chair Shawn Sendlinger called a faculty meeting to nominate Plaintiff for Professor Emeritus status and submitted his nomination portfolio. Pursuant to NCCU nomination guidelines, Plaintiff's nomination was forwarded to a committee of eight chairs and directors of NCCU's College of Science and Technology, which approved Plaintiff's nomination in May 2012. Plaintiff's nomination was then forwarded to the NCCU Faculty Senate, where it was unanimously approved in December 2012. These actions were concordant with NCCU's nomination guidelines. Plaintiff alleges his nomination was then "erroneously" forwarded by Provost Johnson to NCCU's Academic Planning Council ("APC") for consideration, "thereby failing to follow the governing procedures in place when Plaintiff's nomination for Professor Emeritus was initiated." At the APC meeting held on 13 February 2013, Plaintiff's nomination was debated and denied.
During the debate, Plaintiff alleges Professor Tokuta made knowingly false and defamatory statements about him to the APC, "with the malicious intent to cause Plaintiff's nomination to be denied, thereby depriving Plaintiff of his good name and reputation in his professional community, as well as Professor Emeritus status." Plaintiff also alleges Professor Jackson "made statements endorsing Tokuta's defamatory statements and [similarly] published other [knowingly] false and defamatory statements" about him to the APC for the purpose of causing his nomination to be denied. Plaintiff complains he was not permitted to be present at the APC meeting and, therefore, he was unable to defend against the professors' allegedly defamatory statements which resulted *437 in the APC denying his nomination. Plaintiff further complains he was not afforded a "post-deprivation, name-clearing hearing."
Plaintiff alleges he was "entitled to Professor Emeritus status pursuant to the rules governing the conferral of Professor Emeritus status at NCCU." Plaintiff alleges that at NCCU,
Professor Emeritus status is not merely honorific. Rather, ... [it] confers ... an array of tangible benefits, including but not limited to the right to use NCCU facilities, offices, laboratories, equipment, and other valuable resources. Those resources are necessary to enable [Plaintiff] to continue to pursue his professional calling as a research scientist, to continue to publish the results of his research, and to continue to participate in other dimensions of his professional calling.
On 12 February 2014, Plaintiff filed his claims for relief. On 17 July 2014, Plaintiff amended his complaint, asserting seven causes of action: (1) deprivation of property in violation of the Fifth and Fourteenth Amendments of the United States Constitution against all Defendants pursuant to 42 U.S.C. § 1983 ; (2) stigmatization in violation of the Fourteenth Amendment against Professors Tokuta and Jackson in their individual capacities pursuant to 42 U.S.C. § 1983 ; (3) entity liability against NCCU and the State pursuant to 42 U.S.C. § 1983 ; (4) slander per se against Professors Tokuta and Jackson in their individual and official capacities, the State, and NCCU; (5) slander per quod against Professors Tokuta and Jackson in their individual and official capacities, the State, and NCCU; (6) violations of the North Carolina Constitution against NCCU and the State; and (7) punitive damages. Plaintiff sought (1) a declaratory judgment that he be "entitled to Professor Emeritus status under the governing standards and procedures;" (2) injunctive relief "forbidding NCCU and the State" from denying him Professor Emeritus status and "forbidding Defendants from engaging in the same or similar defamatory conduct concerning the Plaintiff in the future;" (3) compensatory damages; (4) punitive damages; and (5) pre- and post-judgment interest and all costs of the action.
In response, all Defendants filed a motion to dismiss pursuant to *345 Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. This matter was heard on 17 July 2014 at the Durham County Superior Court before the Honorable Orlando F. Hudson. By order filed 22 July 2014, the trial court granted Defendants' motion to dismiss in its entirety and denied all of Plaintiff's claims with prejudice. *438 II. Analysis
A. Standard of Review
Plaintiff contends the trial court erred in granting Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted as to all seven of his causes of action.
The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true. Legal conclusions, however, are not entitled to a presumption of validity. Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.
Wells Fargo Bank, N.A. v. Corneal, --- N.C.App. ----, ----, 767 S.E.2d 374, 377 (2014) (citation omitted). In reviewing a Rule 12(b)(6) dismissal, this Court "accept[s] all the well-pleaded facts, not conclusions of law, as true[,]" Privette v. Univ. of N. Carolina at Chapel Hill, 96 N.C.App. 124, 132, 385 S.E.2d 185, 189 (1989) (citations omitted), and is "not required ... to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Strickland v. Hedrick, 194 N.C.App. 1, 20, 669 S.E.2d 61, 73 (2008) (internal quotation marks and citations omitted). This Court "conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Page v. Lexington Ins. Co., 177 N.C.App. 246, 248, 628 S.E.2d 427, 428 (2006) (brackets, quotation marks, and citation omitted).
B. Constitutional Claims
Plaintiff advances his first ("Deprivation of Property in Violation of the Fifth and Fourteenth Amendment"), second ("Stigmatization in Violation of the Fourteenth Amendment"), and third ("Entity Liability") claims under the rubric of 42 U.S.C. § 1983, alleging violations of his procedural due process rights.
Section 1983 provides a private right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and *439 laws [.]" 42 U.S.C. § 1983 (2014) (emphasis added). Because 42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred[,]" Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), "identification of a constitutionally protected right is a prerequisite of plaintiff's right to sue under § 1983." Clayton v. Branson, 170 N.C.App. 438, 452, 613 S.E.2d 259, 269 (2005) (citations omitted).
Plaintiff also advances his sixth claim ("Violations of the North Carolina Constitution and Conspiracy") directly under the Constitution of North Carolina, alleging "[t]he same conduct that gives rise to Plaintiff's § 1983 claims for violations of the United States Constitution also violate the parallel provisions of the North Carolina Constitution." Therefore Plaintiff's first, second, third, and sixth claims will be addressed together as a claim for violation of his federal and state procedural due process rights.
The Due Process Clause of "[t]he Fifth Amendment to the Constitution of the United States, applied to the States through the Fourteenth Amendment, provides in pertinent part: 'No person shall ... be deprived of life, liberty, or property, without due process of law[.]' " Wang v. UNC-CH Sch. of Med., 216 N.C.App. 185, 201, 716 S.E.2d 646, 656-57 (2011) (citation and quotation marks omitted). "Both the Fourteenth Amendment to the U.S. Constitution and Article I, Section 19 of the North Carolina Constitution *346 provide protection against deprivation of liberty or property interests secured by the Bill of Rights or created by state law without adequate procedure, such as notice and an opportunity to be heard." Toomer v. Garrett, 155 N.C.App. 462, 474, 574 S.E.2d 76, 87 (2002) (citing Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) ; Wuchte v. McNeil, 130 N.C.App. 738, 505 S.E.2d 142 (1998) ; Howell v. Carolina Beach, 106 N.C.App. 410, 417 S.E.2d 277 (1992) ). "Decisions as to the scope of procedural due process provided by the federal constitution are highly persuasive with respect to that afforded under our state constitution." Id. (citing State v. Young, 140 N.C.App. 1, 535 S.E.2d 380 (2000) ). "At the threshold of any procedural due process claim is the question of whether the complainant has a liberty or property interest, determinable with reference to state law, that is protectible under the due process guaranty." Maines v. City of Greensboro, 300 N.C. 126, 134, 265 S.E.2d 155, 160 (1980) (citations omitted).
1. Property Deprivation Claim
Plaintiff contends his constitutional rights secured by the Fifth and Fourteenth Amendments to the United States Constitution were violated *440 and claims the benefit of section 1983 by virtue of his "due process property interest" in Professor Emeritus status, of which he contends NCCU deprived him without due process.
"Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Tripp v. City of Winston-Salem, 188 N.C.App. 577, 582, 655 S.E.2d 890, 893 (2008) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ). Therefore, the determination of whether Plaintiff has a claim of entitlement to Professor Emeritus status requires this Court to look to the source which created the alleged property interest. See id.
However, Plaintiff does not cite any statute or university regulation which allegedly created the property interest to which Plaintiff claims entitlement. Limited as we are to considering only matters within the pleadings in reviewing a Rule 12(b)(6) motion to dismiss, we cannot discern whether "rules governing the conferral of Professor Emeritus status" secured any cognizable entitlement to this honorary status. As Plaintiff failed to include the rules under which he claims created his alleged entitlement, he has failed to demonstrate the existence of a protected property interest, because he has not shown he had any more than an expectation he would be nominated for the status.
The procedural protection of property provided by due process secures "interests that a person has already acquired in specific benefits." Roth, 408 U.S. at 576, 92 S.Ct. 2701 (emphasis added). However, "[t]he procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit[.]' " Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (citing Roth, 408 U.S. 564, 92 S.Ct. 2701 ). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. (citing Roth, 408 U.S. 564, 92 S.Ct. 2701 ). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Id. at 756, 125 S.Ct. 2796 (citation omitted).
Here, Plaintiff's section 1983 claims presume his interest in Professor Emeritus status is a protected property interest; however, property interests are only protected where one has a legitimate claim of entitlement. Plaintiff identifies no legal basis to support his assertion of a "due process property interest" secured by the United States or North Carolina constitutions, or any federal or state law, in the *441 conferral of Professor Emeritus status to a retired NCCU professor. While Plaintiff contends he acquired "a legitimate claim of entitlement," he fails to present sufficient record support or legal authority underlying his alleged property interest, save for the conclusory allegation that *347 "[Plaintiff] was entitled to Professor Emeritus status pursuant to the rules governing the conferral of Professor Emeritus status at NCCU." Plaintiff failed to include the "standards and procedures enacted at the time Plaintiff's nomination process began." In reviewing a complaint dismissed under Rule 12(b)(6), this Court treats a plaintiff's factual allegations as true, but it does not " accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Strickland, 194 N.C.App. at 20, 669 S.E.2d at 73 (internal quotation marks and citations omitted).
In the instant case, at no point before or after retirement did Plaintiff actually acquire the specific benefit of Professor Emeritus status. He was merely "nominated." No alleged facts, even when taken as true, indicate nomination results in automatic approval. To the contrary, Plaintiff's complaint forecasts that conferral of the status is a discretionary university decision; the nomination must pass several stages of approval by multiple committees. Such a discretionary conferral process cannot give rise to more than a "unilateral expectation" of the status. See Clayton, 170 N.C.App. at 454-55, 613 S.E.2d at 271. We find analogous and instructive this Court's discussion of discretionary employment decisions:
To assess a candidate's accomplishments ... necessarily involves subjective judgment and the substantial exercise of discretion. The regulations and guidelines [for doing so] in no way create the type of clear, nondiscretionary "entitlement" ... that the Supreme Court has found to be necessary to establish a constitutionally protected property interest.
Id. at 454, 613 S.E.2d at 271 (quoting Harel v. Rutgers, 5 F.Supp.2d 246, 273 (D.C.N.J.1998) ).
Furthermore, the only evidence of Plaintiff's arrangement with NCCU indicates that he was a retired professor who, therefore, had no property interest entitled to due process protection. See Pressman v. Univ. of N. Carolina at Charlotte, 78 N.C.App. 296, 302, 337 S.E.2d 644, 648 (1985) (recognizing that "a state employee has no property interest protected by due process where the employee has no specific interest in continued employment, and his employment is essentially terminable at will"). Even when taken as true, the factual allegations *442 do not support the conclusion NCCU was under any contractual obligation to award Plaintiff Professor Emeritus status, or that Plaintiff had a preexisting contract with NCCU that was terminated due to Defendants' activities. As such, no basis supports a claim that Plaintiff was deprived a protected property interest when NCCU faculty discretionarily denied his nomination.
Moreover, we find instructive this Court's reliance in Pressman on Kilcoyne v. Morgan, 664 F.2d 940 (4th Cir.1981), cert. denied, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). See Pressman, 78 N.C.App. 296, 337 S.E.2d 644. In Kilcoyne, a non-tenured state university professor claimed his due process rights were violated because the procedures set forth in East Carolina University's ("ECU") tenure and policy manual were allegedly not followed by the defendants. Finding no valid due process claim, the Fourth Circuit held:
Far from disclosing a violation of his constitutional rights, [the] complaint reveals that ECU provided procedural safeguards beyond the requirements of the Fourteenth Amendment. Because he lacked a right to further employment at ECU, his denial of tenure and further employment without any procedural safeguards would have been permissible under the Fourteenth Amendment. Had ECU gratuitously afforded tenure aspirants procedural safeguards not constitutionally mandated, deviations from these procedures would not support a claim under the Fourteenth Amendment and Section 1983.
Kilcoyne, 664 F.2d at 942 (internal citations omitted). This Court in Pressman applied the principles promulgated in Kilcoyne and held that because non-tenured state professors lacked a right to further employment, there existed no valid due process claim and, therefore, any deviation from procedural safeguards provided by the university also failed to support a due process claim. Pressman, 78 N.C.App. at 302, 337 S.E.2d at 648.
*348 The absence of any record or legal support underlying Plaintiff's claim to a "due process property interest" in Professor Emeritus status compels us to conclude his section 1983 causes of action premised solely thereupon must fail. See State ex rel. Utils. Comm'n v. Carolina Util. Customers Ass'n, 336 N.C. 657, 678, 446 S.E.2d 332, 344 (1994) ("Where there is no property interest, there is no entitlement to constitutional protection.") (citing Huang v. Bd. of Governors of Univ. of *443 N. Carolina, 902 F.2d 1134 (4th Cir.1990) ). It is therefore unnecessary to address Plaintiff's contention that the change in NCCU's nomination procedure-which appears now to include a faculty deliberation of a nomination outside of a candidate's presence without a "name-clearing" hearing-deprived him of that alleged interest. See Gonzales, 545 U.S. at 757, 125 S.Ct. 2796.
2. Liberty Deprivation Claim
Plaintiff contends Professors Tokuta and Jackson's allegedly defamatory statements, made individually, deprived him of a constitutionally protected "liberty interest in his reputation and choice of occupation" without due process of law. Plaintiff asserts a "stigma-plus" claim that provides redress for "false statements that cause reputational stigma ... when they are made in connection with an action that impairs a plaintiff's career options or his ability to pursue his professional calling." We are not persuaded.
" '[I]njury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment.' " Toomer, 155 N.C.App. at 475, 574 S.E.2d at 87 (quoting Siegert v. Gilley, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ). To invoke an employee's liberty interest, the stigmatizing remarks must be "made in the course of a discharge or significant demotion." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 309 (4th Cir.2006) (quotation marks omitted). "[R]eassignment of an employee to a position outside his field of choice" has been held sufficient. Id.
Here, Plaintiff's claim for "stigma-plus" states in pertinent part: "Acting under color of state law, Tokuta and Jackson maliciously made defamatory statements concerning Plaintiff for the purpose of stigmatizing Plaintiff in his professional community and depriving Plaintiff of the Professor Emeritus status to which Plaintiff was entitled." Plaintiff asserts that the professors' allegedly defamatory statements, which inflicted harm to his reputation, were sufficient to support a section 1983 due process claim, because they resulted in deprivation of Professor Emeritus status to which he claims entitlement. As we have already determined Plaintiff had no legitimate claim to Professor Emeritus status, we conclude the denial of Plaintiff's nomination of the status was not an adverse employment action sufficient to add the "plus" to the reputational stigma of Professors Tokuta and Jackson's allegedly defamatory remarks. As Plaintiff has not alleged harm to protected property or liberty interests, we need not discuss his challenge that NCCU's failure to provide a "name-clearing hearing" deprived him of that alleged interest.
*444 Plaintiff failed to state a claim upon which relief can be given under this legal theory and, therefore, we affirm the trial court's dismissal of this cause of action.
3. Entity Liability Claim
Plaintiff relies on Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977) to support his contention that NCCU and the State are liable under section 1983 due to NCCU's "constitutionally inadequate training and constitutionally inadequate Professor Emeritus status approval procedures."
In Monell, a class of female employees under the rubric of section 1983 sued the Department of Social Services and the Board of Education of the city of New York, which "had as a matter of official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons." 436 U.S. at 661, 98 S.Ct. 2018. The district court held the acts were unconstitutional but denied petitioners' claims for backpay because the damages would come from the city of New York, which as a municipality was at the time immune from such damages. As a result, "the Supreme Court held for the first time that a local governmental body could be sued *349 under § 1983, but ... only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [.]' " Enoch v. Inman, 164 N.C.App. 415, 419, 596 S.E.2d 361, 364 (2004) (quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018 ).
Here, unlike in Monell, where there was a clearly protected interest at stake, we have concluded there were no matured interests sufficient to warrant constitutional protection under section 1983. As Plaintiff has alleged no constitutionally protected interest, no entity liability can attach to NCCU for its allegedly constitutionally inadequate Professor Emeritus status conferral procedures. Because Plaintiff failed to identify a protected property or liberty interest sufficient to state a claim under section 1983, Plaintiff's entity liability claim arising under section 1983 must also fail. See Ware v. Fort, 124 N.C.App. 613, 616, 478 S.E.2d 218, 220 (1996) ( "To state a claim under 42 U.S.C. § 1983, plaintiff must allege facts demonstrating that some right secured by the federal constitution or federal law has been abridged.") (citing Corum v. Univ. of N. Carolina, 330 N.C. 761, 770, 413 S.E.2d 276, 282 (1992) ). Therefore, we dismiss Plaintiff's challenge and affirm the trial court's dismissal of this issue.
*445 D. Defamation Claims
Plaintiff advances his fourth ("Slander Per Se ") and fifth ("Slander Per Quod ") actions under North Carolina tort law. Plaintiff concedes the trial court properly dismissed these actions against the State, NCCU, and Professors Tokuta and Jackson in their official capacities, based upon the defense of sovereign immunity and, therefore, we need not address these actions. However, Plaintiff asserts these actions against Professors Tokuta and Jackson in their individual capacities were improperly dismissed. We disagree.
Under North Carolina law, slander per se and slander per quod are the two actionable classes of oral defamation. Slander per se relates to false remarks that "in themselves (per se ) may form the basis of an action for damages, in which case both malice and damage are, as a matter of law, presumed [.]" Donovan v. Fiumara, 114 N.C.App. 524, 527, 442 S.E.2d 572, 574 (1994) (quoting Beane v. Weiman Co., Inc., 5 N.C.App. 276, 277, 168 S.E.2d 236, 237 (1969) ). Specifically, this former class of oral defamation is " 'an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease.' " Losing v. Food Lion, L.L.C., 185 N.C.App. 278, 281, 648 S.E.2d 261, 263 (2007) (quoting Boyce & Isley, PLLC v. Cooper, 153 N.C.App. 25, 29-30, 568 S.E.2d 893, 898 (2002) ). Our Courts have held that "alleged false statements ... calling plaintiff 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se. " Stutts v. Duke Power Co., 47 N.C.App. 76, 82, 266 S.E.2d 861, 865 (1980) (italics added).
Slander per quod relates to false remarks which may "sustain an action only when causing some special damages (per quod ), in which case both the malice and the special damage must be alleged and proved." Beane, 5 N.C.App. at 277, 168 S.E.2d at 237 (emphasis added) (citation omitted). This latter class comprises a remark which is not defamatory on its face but causes injury with "extrinsic, explanatory facts." Donovan, 114 N.C.App. at 527, 442 S.E.2d at 574-75 (quoting Badame v. Lampke, 242 N.C. 755, 757, 89 S.E.2d 466, 467 (1955) ). To prevail on a slander per quod claim, "the injurious character of the words and some special damage must be pleaded and proved." Beane, 5 N.C.App. at 278, 168 S.E.2d at 238. Either class of oral defamation requires that the plaintiff plead with some degree of particularity the words attributed to the defendant.
*446 Our Supreme Court has explained allegedly slanderous remarks need not be repeated verbatim, but they must "be alleged 'substantially' in haec verba, or with sufficient particularity to enable the court to determine whether the statement was defamatory." Stutts, 47 N.C.App. at 83-84, 266 S.E.2d at 866. Furthermore, under *350 Rule 8(a)(1) of the North Carolina Rules of Civil Procedure, the pleading must contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief [.]" N.C. Gen.Stat. § 1A-1, Rule 8(a)(1) (2014) (emphasis added) (noting in the editorial comments that "[b]y specifically requiring a degree of particularity the Commission sought to put at rest any notion that the mere assertion of a grievance will be sufficient under these rules").
Here, Plaintiff's alleges:
Upon information and belief, at the February 13, 2013 meeting of the APC, immediately before the APC voted on Plaintiffs nomination, Defendant Tokuta made false and defamatory statements concerning Plaintiff to the APC, knowing that his defamatory statements were false, and with the malicious intent to cause Plaintiff's nomination to be denied, thereby depriving Plaintiff of his good name and reputation in his professional community, as well as Professor Emeritus status.
Plaintiff fails to identify with any degree of specificity the allegedly defamatory remarks made by Professors Tokuta or Jackson, either specifically or in substance, which prevents judicial determination of whether the statements were defamatory. Indeed, Plaintiff's amended complaint contains no further detail at all about what was allegedly said. The only basis on which this Court is left to determine the defamatory nature of the alleged statements is Plaintiff's conclusory allegation that the statements were "false and defamatory." Under a Rule 12(b)(6) analysis, this Court does not "accept as true allegations that are merely conclusory[.]" Strickland, 194 N.C.App. at 20, 669 S.E.2d at 73 (quotation marks and citations omitted).
While the Court cannot say whether the alleged statements were defamatory, it can say conclusively that Plaintiff has failed to plead a claim for defamation with sufficient particularity, rendering it facially deficient. As Plaintiff failed to identify with any degree of specificity the *447 allegedly slanderous statements, his causes of action for defamation do not state a claim and must fail.
D. Punitive Damages
Because Plaintiff has failed to state any claim upon which relief may be granted, his claim for punitive damages necessarily fails. See Oestreicher v. Amer. Nat'l Stores, Inc., 290 N.C. 118, 134, 225 S.E.2d 797, 807-08 (1976) ( "If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award.") (citations omitted).
III. Conclusion
Based on the foregoing and our review of the record, we affirm the trial court.
AFFIRMED.
Judges STEPHENS and TYSON concur.