Dunn Holdings I, Inc. v. Confluent Health, LLC, 2018 NCBC 126.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

DUNN HOLDINGS I, INC.
(previously DUNN PHYSICAL
THERAPY, INC.), a North Carolina
corporation, Individually and
Derivatively on behalf of
BREAKTHROUGH CARY PT, LLC;
CHRISTOPHER F. DUNN; and
THERESA M. DUNN,

          Plaintiffs,

     v.

CONFLUENT HEALTH LLC, a
Delaware limited liability company;
LAURENCE N. BENZ, Manager of
Breakthrough Cary PT, LLC;
BREAKTHROUGH CARY PT, LLC,
a North Carolina limited liability
company; MARK F. WHEELER;
JEFFREY HATHAWAY; and
BREAKTHROUGH PHYSICAL
THERAPY, INC.,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 9321

**ORDER AND OPINION ON
PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS**

THIS MATTER comes before the Court on Plaintiffs Dunn Holdings I, Inc.,

individually and derivatively on behalf of Breakthrough Cary, PT, LLC, Christopher

F. Dunn, and Theresa M. Dunn's (collectively, "Plaintiffs") Motion to Dismiss

Counterclaims. ("Motion"; ECF No. 60.)

THE COURT, having considered the Motion, the briefs in support of and in

opposition to the Motion, the arguments of counsel at the hearing, and other

appropriate matters of record, concludes that the Motion should be GRANTED, in

part, and DENIED, in part, for the reasons set forth below.

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by J.
> Mitchell Armbruster for Plaintiffs Dunn Holdings I, Inc.; Christopher
> Dunn; and Theresa Dunn.*

*Stites & Harbison PLLC, by Chadwick A. McTighe (pro hac vice) and Timothy D. Thompson (pro hac vice), and Robinson, Bradshaw & Hinson, P.A., by Edward F. Hennessey, IV for Defendants Confluent Health LLC; Laurence N. Benz; Breakthrough Cary PT, LLC; Mark F. Wheeler; Jeffrey Hathaway; and Breakthrough Physical Therapy, Inc.*

McGuire, Judge.

## I.      FACTS AND PROCEDURAL BACKGROUND

1.      The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (hereinafter, the North Carolina Rules of Civil Procedure will be referred to as "Rule(s)"). In this case, the Court only recites those facts included in the counterclaims that are relevant to the Court's determination of the Motion. All facts herein are drawn from the allegations in Defendants' counterclaims. (Answ. and Countercl., ECF No. 59 at CC, pp. 27–38.)

*A. Parties Relevant to the Counterclaims*

2.      Defendants Breakthrough Cary, LLC ("Breakthrough Cary") and Breakthrough Physical Therapy, Inc. ("Breakthrough PT") are affiliated entities organized under the laws of North Carolina, which engage in the business of providing physical therapy treatment to patients at multiple locations across North Carolina. (ECF No. 59 at CC, ¶¶ 1–2.) Breakthrough Cary is a part of the overall Breakthrough PT practice. (*Id.*)[1]

---

[1] The allegations in the counterclaims do not contain any further explanation of the corporate or other relationship between Breakthrough Cary and Breakthrough PT, and neither party has attempted to explain the exact nature of the relationship in their briefing. For purposes of deciding the Motion, the Court treats Breakthrough Cary and Breakthrough PT as the same entity.

3. Defendant Confluent Health, LLC ("Confluent") is a Delaware limited liability company based in Kentucky that acts as a holding company for numerous physical therapy practices, including Breakthrough Cary and Breakthrough PT. (*Id.* at ¶ 3.)

4. Defendant Dr. Laurence Benz ("Benz") is the manager of Breakthrough Cary and Confluent. (*Id.* at ¶ 4.)

5. Plaintiff Dunn Holdings I, Inc. ("Dunn Holdings") is a North Carolina corporation owned by Plaintiffs Dr. Christopher F. Dunn ("Christopher") and his wife, Theresa M. Dunn ("Theresa", collectively "the Dunns"). (*Id.* at ¶ 6.) In 2014, the Dunns sold substantially all of the assets of Dunn Holdings to Breakthrough Cary ("the Transaction"). (*Id.* at ¶ 11.) The Transaction was accomplished through the parties' execution of an Asset Purchase Agreement. ("APA", ECF No. 50.2.) As a result of the Transaction, Dunn Holdings is a member of, and owns a 20% interest in, Breakthrough Cary. The remaining 80% interest in Breakthrough Cary is currently held by Confluent.[2] (Breakthrough Cary Op. Ag., ECF No. 50.1, at p. 30 (hereinafter "Operating Agreement").) Dunn Holdings is a party to Breakthrough Cary's Operating Agreement. (*Id.* at p. 1.)

6. The APA contains the following provision regarding confidentiality:

---

[2] The 80% interest was originally held by PT Development Cary, LLC ("PT Development"). It is undisputed that PT Development's interest was later transferred to Confluent.

> From and after the Closing, [Dunn Holdings]and [the Dunns] shall, . . . use its commercially reasonable efforts to cause its or their respective representatives to hold, in confidence any and all information, whether written or oral, concerning the … Transaction Documents or the [Transaction].

(ECF No. 50.2, at p. 36.)

7. In conjunction with the Transaction, Christopher was employed by Breakthrough Cary and Breakthrough PT under a written Employment Agreement executed between Christopher and Breakthrough PT. (ECF No. 59 at CC, ¶ 5; Employment Agreement, ECF No. 61 at Ex. A.) The Employment Agreement provided in relevant part as follows:

> [Christopher] shall devote his full business time and effort to [Breakthrough PT]. [Christopher] agrees to perform his duties hereunder to the best of his ability and at a level of competency consistent with the position occupied, to act on all matters in a manner that is in the best interest of [Breakthrough PT], and to use his best efforts, skill and ability to promote the profitable growth of [Breakthrough PT]. The duties and responsibilities of [Christopher] under this Agreement shall include providing physical therapy services to the patients of [Breakthrough PT], and performing such other duties as may be assigned to [Christopher] by [ ] Benz …

(ECF No. 61 at Ex. A, p. 4.)

8. Benz assigned certain responsibilities to Christopher that otherwise would have been performed by Benz as the manager of Breakthrough Cary. (*Id.* at ¶ 8.) Defendants allege that, by acting on behalf of Breakthrough Cary in a managerial capacity, Christopher occupied a position of trust and confidence with,

and owed fiduciary duties to, Breakthrough Cary and Breakthrough PT. (*Id.* at ¶¶ 7–8.)

### B. Christopher's and Dunn Holdings' alleged wrongdoing

9. Defendants allege that Christopher and Dunn Holdings engaged in repeated acts of misconduct during and after Christopher's time as an employee for Breakthrough Cary and Breakthrough PT. (*Id.* at ¶¶ 10–21.) The alleged wrongdoing includes: (1) diversions of Breakthrough Cary's funds, (2) misuse of Breakthrough Cary's resources, (3) engaging in unauthorized actions; (4) disclosures of confidential information; (5) defaming Breakthrough Cary, Confluent, and Benz; and (6) failing to comply with the terms of the Operating Agreement. (*Id.*)

#### i. Diversions of Funds

10. Following the Transaction, Dunn Holdings' accounts receivable became the property of Breakthrough Cary. (*Id.* at ¶ 11.) On June 2, 2014, Dunn Holdings entered into an "Interim Billing Agreement" with Breakthrough Cary. (*Id.* at ¶ 12; Interim Bill. Agr., ECF No. 63.1 (hereinafter "Billing Agreement").) The Billing Agreement required Dunn Holdings to collect the accounts receivable and deposit them to an account designated by Breakthrough Cary. (ECF No. 59, at ¶ 12.) However, instead of depositing payments received to the Breakthrough Cary account, Christopher diverted them to accounts under his control. (*Id.* at ¶ 11.) The Billing Agreement expired on December 31, 2014. (*Id.*)

#### ii. Misuse of Company Resources

11.     Christopher negotiated a deal between Breakthrough PT and the school that his children attend to provide services to the school at below market rates in an effort to obtain personal benefits from the school. (*Id.* at ¶ 14.) Breakthrough PT did not authorize or approve of the arrangement, which inured to its detriment and to Christopher's benefit. (*Id.*)

iii.     Unauthorized Actions

12.     Christopher, unilaterally and without authority, removed a covenant not to compete from the employee contract of at least one of Breakthrough Cary and Breakthrough PT's employees. (*Id.* at ¶ 16.) The employee has now resigned and made clear her intention to compete with the Breakthrough companies.

13.     Christopher also, unilaterally and without authority, increased the compensation of certain employees with "full knowledge that [Benz] would not approve of the [ ] increases." (*Id.* at ¶ 17.)

iv.     Disclosures of Confidential Information

14.     In his pleadings filed in this lawsuit, Christopher disclosed confidential financial information about Breakthrough Cary and Breakthrough PT, and the terms of the Transaction. Defendants allege the disclosures were made in violation of the confidentiality provisions of the APA. (*Id.* at ¶ 19.)

v.     Defamatory Statements

15.     In November of 2017, Christopher intentionally or recklessly made representations to various employees "about alleged embezzlement" by Breakthrough

Cary, Confluent, and Benz. (*Id.* at ¶ 20.) Defendants allege the statements were defamatory. (*Id.* at ¶ 45.)

vi. <u>Failure to comply with the Breakthrough Cary Operating Agreement</u>

16. In December of 2017, Christopher resigned as an employee of Breakthrough Cary and Breakthrough PT. (*Id.* at ¶¶ 5, 56.) Section 16.8 of the Breakthrough Cary Operating Agreement states that "[i]n the event Christopher's employment with Breakthrough [PT] is terminated for any reason whatsoever, then such termination of employment shall be deemed as an offer by Dunn [Holdings] to sell all of its Membership Interests to [Breakthrough Cary], and [Breakthrough Cary] shall purchase such Membership interests." (ECF No. 50.1, at pp. 22–23; ECF No. 59 at CC, at ¶ 51.) The Operating Agreement provides that the purchase price shall be "the fair market value" of the transferring member's interest as determined by agreement among the members within 30 business days of the triggering event. (ECF No. 50.1, at pp. 21–22.) If the parties cannot reach agreement, the fair market value is determined through a detailed appraisal process. (*Id.*)

17. Following Christopher's resignation, Breakthrough Cary notified Dunn Holdings that it was invoking the provisions of section 16.8, but Dunn Holdings has refused to engage in the process for determining the fair market value of Dunn Holding's interests. (ECF No. 59 at CC, ¶¶ 56–62.) Breakthrough Cary alleges that Dunn Holdings has breached the Operating Agreement by refusing to participate in the mandatory appraisal and buyout process. (*Id.* at ¶¶ 21, 64.) Alternatively,

Breakthrough Cary asks the Court to declare the rights of the parties under the OA and to determine how the appraisal process should occur. (*Id.* at ¶ 65.)

*C. Procedural History*

18. Plaintiffs filed their first Complaint in this matter on July 28, 2017. (ECF No. 3.) Plaintiffs subsequently filed an Amended Complaint on November 6, 2017. (ECF No. 7.) On December 22, 2017, Plaintiffs filed a Motion to Amend Complaint. (ECF No. 36.) The Court granted the Motion to Amend Complaint on January 30, 2018 and deemed the Second Amended Complaint to have been filed and served upon Defendants on January 30, 2018. (ECF No. 47.)

19. On May 8, 2018, Defendants filed their Answer and Counterclaims. (ECF No. 59.) Defendants bring the following counterclaims: (1) breach of contract (asserted by Breakthrough Cary and Breakthrough PT against Christopher and Dunn Holdings); (2) breach of fiduciary duty and conversion (asserted by Breakthrough Cary against Christopher); (3) defamation and slander per se (asserted by Breakthrough Cary, Confluence, and Benz against Christopher); and (4) breach of contract or declaration of rights (asserted by Breakthrough Cary against Dunn Holdings).

20. On June 11, 2018, Plaintiffs filed a Reply to Counterclaim. (ECF No. 61.)

21. On June 11, 2018, Plaintiffs also filed the Motion, along with a supporting brief. (Br. Supp. Mot. Dismiss Countercl., ECF No. 62.) Defendants filed a response brief in opposition to the Motion on July 6, 2018, (Mem. Opp. Mot. Dismiss

Countercl., ECF No. 68), and Plaintiffs filed their reply brief on July 19, 2018 (Reply Supp. Mot. Dismiss Countercl., ECF No. 70). The Court held a hearing on the Motion at which counsel made oral arguments,[3] and the Motion is now ripe for determination.

## II.    ANALYSIS

### A. *Standard of Review*

22.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). North Carolina is a notice pleading state. *See, e.g.*, *Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)). Under the notice pleading standard,

> [a] complaint sufficiently states a claim upon which relief can be granted when it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and by using the rules provided for obtaining pretrial discovery to get any additional information he may need to prepare for trial.

*Spoor v. Barth*, 811 S.E.2d 609, 612, 2018 N.C. App. LEXIS 93, at *6 (N.C. Ct. App. 2018) (quoting *Wray v. City of Greensboro*, 370 N.C. 41, 45, 802 S.E.2d 894, 898

---

[3] At the hearing on the Motion, Defendants abandoned their claim against Christopher for conversion. Accordingly, Plaintiffs' motion to dismiss Defendants' conversion claim should be GRANTED.

(2017)).  In applying this standard, "mere vagueness or lack of detail" is generally not grounds for dismissal.  *Krawiec v. Manly*, 370 N.C. 602, 619, 811 S.E.2d 542, 554 (2018).  Additionally, complaints are to be construed liberally, such that few fail to survive a motion to dismiss.  *Wray*, 370 N.C. at 46, 802 S.E.2d at 898.

23.     Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim."  *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).  In deciding a motion to dismiss, the Court should construe the complaint liberally and accept all well-pleaded allegations as true.  *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 225, 695 S.E.2d 437, 440 (2010).  The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation and quotations omitted).  In addition, the Court may consider documents that are the subject of Defendant's Counterclaims and to which the Counterclaims specifically refer.  *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

24.     Plaintiffs have moved to dismiss the remaining counterclaims for breach of contract (Count I), breach of fiduciary duty (Count II), defamation and slander per se (Count III), and breach of contract/declaratory judgment (Count IV). The Court will consider each claim in turn.

### B. Breach of Contract (Counts I and IV)

25. Defendants allege the following breaches of contract: (i) breach of Christopher's Employment Agreement by Christopher; (ii) breach of the confidentiality provision of the APA by Christopher and Dunn Holdings; (iii) breach of the Interim Billing Agreement by Dunn Holdings; and (iv) breach of the Operating Agreement/declaratory judgment by Dunn Holdings.

26. Plaintiffs move to dismiss Defendants' breach of contract claims on the grounds including, inter alia, that the breach of contract claims are not pled with the requisite specificity to state a claim under the notice pleading standard. (ECF No. 62, at pp. 5–10, 15–17.) Defendants contend that their pleadings satisfy the low bar for alleging breach of contract claims under North Carolina's notice pleading standard. (ECF No. 68, at pp. 1–5, 8–10.)

27. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). "[W]here the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004); s*ee also Schlieper v. Johnson* 195 N.C. App. 257, 265–66, 672 S.E.2d 548, 553–54 (2009) (holding that plaintiff's breach of contract claim survived a 12(b)(6) motion based on plaintiff's allegations that defendant breached the terms of plaintiff's employment by failing to pay a performance bonus, despite the fact that plaintiff had yet to present evidence of a specific agreement under which he was entitled to a bonus); *Barbarino*

*v. Cappuccine, Inc.*, 219 N.C. App. 400, 722 S.E.2d 211, 2012 N.C. App. LEXIS 305, at *5–9 (N.C. Ct. App. 2012) (unpublished) (holding that the trial court erred in dismissing defendant's breach of contract counterclaim as "conclusory" because plaintiff's complaint, even if vague and lacking detail, had alleged a valid contract and a breach of that contract).

### i. Breach of the Employment Agreement

28. Defendants allege Christopher breached the Employment Agreement by failing to "perform his duties competently and to act in the best interests of Breakthrough [PT]," in violation of the "best efforts" provision of Christopher's Employment Agreement. (ECF No. 59 at CC, ¶¶ 9, 23–24.) Defendants allege that Christopher violated "contractual duties to Breakthrough [PT]" by "altering employee agreements without authorization to do so in a manner detrimental to Breakthrough Physical Therapy, [ ] authorizing compensation increases without authority to do so, and [ ] negotiating improper and unauthorized agreements . . . that benefited [Christopher] and his family to the detriment of Breakthrough [PT]." (*Id.* at ¶ 24.)

29. Defendants contend that the claim for breach of Employment Agreement should be dismissed because it is lacking in detail and "does not specifically allege how or whether Dr. Dunn breached [the 'best efforts'] provision." (ECF No. 62, at p. 6.) The Court disagrees. While the allegations are bare-boned, the Court concludes, for the purposes of this Motion, that Defendants' allegations meet the low bar for breach of contract claims set by North Carolina's notice pleading standard. Defendants have alleged the existence of a contract between Christopher

and Breakthrough PT—the Employment Agreement—and also pointed to several specific actions—diverting funds, amending employee agreements, negotiating agreements that harmed Breakthrough PT—that Defendants contend breached the "best efforts" provision of the agreement. Defendants' allegations are detailed enough to enable Plaintiffs to answer and prepare for trial, which is all North Carolina's notice pleading standard requires.

30. Therefore, Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the employment contract for failure to state a claim should be DENIED.

ii. Breach of the Confidentiality Agreement

31. Defendants allege that Christopher and Dunn Holdings violated contractual duties of confidentiality that they owed to Breakthrough Cary and Breakthrough PT pursuant to the Asset Purchase Agreement. (ECF No. 59 at CC, ¶¶ 19, 25–26.) Plaintiff argues that the counterclaim fails because Defendants did not "identify what confidential information was divulged" or allege how the sharing of confidential information constituted a breach of any confidentiality provision. (ECF No. 62, at p. 7.)

32. In relevant part, Defendants allege that Christopher and Dunn Holdings breached the confidentiality provision of the APA by sharing "detailed financial information about Breakthrough Cary and Breakthrough [PT]" and other information about the Transaction, in the public record in this action without making efforts to preserve the confidentiality of the information. (ECF No. 59 at CC, ¶¶ 19, 27–38.) Thus, the Defendants have alleged the existence of a valid contract between

Christopher, Dunn Holdings, and Breakthrough Cary—the Asset Purchase Agreement—and specific conduct which allegedly breached the confidentiality provision in the contract—the sharing of detailed financial information from the Agreement in the public record without making an effort to keep it confidential. Again, while Defendants' allegations are minimal, they are sufficient to state a claim for breach of contract under North Carolina's notice pleading standard. The allegations give Plaintiffs "sufficient notice of the events or transactions which produced the claim [and] enable [Plaintiffs] to understand the nature of it and the basis for it, [and] to file a responsive pleading . . . ." *Spoor*, 811 S.E.2d at 612 (citation and quotations omitted). Specifically, Plaintiffs can review the Asset Purchase Agreement and their Complaint to determine what information, if any, from the APA they disclosed in the Complaint.

33. Therefore, Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the confidentiality provision in the APA should be DENIED.

### iii. Breach of the Interim Billing Agreement

34. Defendants allege that Dunn Holdings breached the Billing Agreement between by failing to bill, collect, and deposit funds from the business in specified bank accounts on behalf of Breakthrough Cary. (ECF No. 59 at CC, at ¶¶ 13, 27–29.) Plaintiffs assert that Defendants' breach of contract claim should be dismissed because it was brought outside of the three year statute of limitations applied to breach of contract claims pursuant to N.C. Gen. Stat. § 1-52. (ECF No. 62, at pp. 9–10.)

35. N.C. Gen. Stat. § 1-52(1) requires that claims for breach of contract be filed within three years. The statute of limitations begins to run upon the breach of the contract. *Abram v. Charter Medical Corp.. Of Raleigh*, 100 N.C. App. 718, 721, 398 S.E.2d 331, 333 (1990).

36. The Billing Agreement, pursuant to its own terms, terminated on December 31, 2014. (ECF No. 63.1, at p. 1.) Defendants' Counterclaim was filed with this Court on June 11, 2018. (ECF No. 59 at CC.) Accordingly, even assuming *arguendo* that there was in fact a breach of the Billing Agreement by Dunn Holdings and assuming further that said breach occurred on December 31, 2014, the very last day the Billing Agreement was in effect, Defendants' Counterclaim was still filed well outside of the 3 year statute of limitations applicable to Defendants' claim under N.C. Gen. Stat. § 1-52.

37. Therefore, Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the Billing Agreement should be GRANTED.

iv. Breach of the Operating Agreement

38. Defendants allege that Dunn Holdings has violated its Operating Agreement by refusing to proceed with the appraisal and sale of its membership interest in Breakthrough Cary. (ECF No. 59 at CC, ¶ 51.) Article 16.8 of the Operating Agreement provides that if Christopher's employment with Breakthrough Cary is "terminated for any reason whatsoever," then Dunn Holdings will be considered to have offered to sell all of its membership interest in Breakthrough Cary,

and Breakthrough Cary will purchase that interest at a price determined pursuant to Article 16.3 of the Operating Agreement. (ECF No. 50.1, at pp. 22–23.)

39. Defendants allege and Plaintiffs admit that Christopher terminated his employment with Breakthrough Cary in December of 2017, triggering Dunn Holdings' obligation to sell its membership interest in Breakthrough Cary. (ECF No. 59 at CC, ¶¶ 56–57; ECF No. 62, at p. 15.) Under Article 16.3, Dunn Holdings had 30 days to agree to a purchase price for its interest with Breakthrough Cary or begin an appraisal process to determine the price of that interest. (ECF No. 18, at p. 21.) Defendants allege that Dunn Holdings has not agreed to a purchase price under Article 16(a), or, in the alternative, selected an appraiser as required under Article 16.3(b), placing Dunn Holdings in violation of the Operating Agreement. (ECF No. 59 at CC, ¶¶ 56–60.) Defendants allege Dunn Holdings' refusal to participate in the process for determining the purchase price is a breach of the Operating Agreement. (*Id.* at ¶ 64.) In the alternative, Defendants allege if the Court "were to conclude that a breach has not yet occurred, it is apparent that there is a dispute between Breakthrough Cary and Dunn Holdings as to the proper interpretation of the operating agreement and how the appraisal process is to proceed. Accordingly, pursuant to N.C. Gen Stat. §§ 1-253 et seq., a declaration of rights is appropriate to determine how the appraisal process is to occur under the operating agreement." (*Id.* at ¶ 65.)

40. In response, Plaintiffs argue that Defendants have failed to allege a specific breach of the Operating Agreement and that Defendants have gone too far in

requesting that the Court order Plaintiffs to comply with the appraisal process or issue a declaration of the respective parties' rights under the Operating Agreement. (ECF No. 62, at pp. 15–17.)

41.     As an initial matter, at the motion to dismiss stage the Court will not consider whether a breach of the Operating Agreement has, in fact, already occurred, but determines only whether or not the underlying cause of action should survive dismissal.

42.     Defendants' allegations that Dunn Holdings breached the Operating Agreement are sufficient both to provide notice to the Plaintiffs to enable them to answer and prepare for trial and also to state a claim for breach of contract. Defendants, by pointing to the Operating Agreement, have properly alleged the existence of a contract between Plaintiffs and Defendants. Defendants explain, step by step, how they believe Christopher triggered Article 16 of the Operating Agreement by resigning from Breakthrough Cary, what requirements they believe that resignation imposed on Dunn Holdings pursuant to the Operating Agreement, and how Dunn Holdings' subsequent behavior allegedly breached that Operating Agreement. (ECF No. 59 at CC, ¶¶ 56–64.) Accordingly, the Court concludes that Defendants have provided Plaintiffs with sufficient notice to satisfy the notice pleading standard and adequately pled their breach of contract claim as required to survive dismissal at this stage of the case.

43.    Therefore, the Plaintiffs' motion to dismiss Defendants' counterclaims for breach of the Operating Agreement and for declaratory judgment should be DENIED.

*C. Breach of Fiduciary Duties*

44.    Breakthrough Cary claims Christopher owed, and breached, fiduciary duties to Breakthrough Cary. (*Id.* at ¶¶ 33–41.) Defendants claim that Christopher owed fiduciary duties as a result of the nature of Christopher's position with Breakthrough Cary and the managerial responsibilities assigned to Christopher by Benz. (*Id.* at ¶ 34.). Christopher argues in response that he was not an employee of Breakthrough Cary, but rather of Breakthrough PT, and that the duties he performed on behalf of the company did not create a fiduciary duty as a matter of North Carolina law. (ECF No. 62, at p. 10.)

45.    To establish a claim for breach of fiduciary duty, a plaintiff must show: "(1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) the breach proximately caused plaintiff's injury." *Green v. Freeman,* 367 N.C. 136, 749 S.E.2d 262, 268 (2013). A fiduciary relationship arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence[.]" *Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (internal quotation marks omitted). Such a relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed in one side, and *resulting domination*

*and influence on the other.*" *Id.* at 652, 548 S.E.2d at 707–08 (quoting *Abbitt*, 201 N.C. at 598, 160 S.E. at 906 (emphasis in original)).

46. In the employment context, the mere existence of an employer-employee relationship is insufficient to give rise to a fiduciary duty. *Id.* at 652, 548 S.E.2d at 708 (quoting *King v. Atl. Coast Line R.R. Co.*, 157 N.C. 44, 62–63, 72 S.E. 801, 808 (1911)) ("Under the general rule, 'the relation of employer and employee is not one of those regarded as confidential.'"); *Austin Maint. & Constr., Inc. v. Crowder Constr. Co.*, 224 N.C. App. 401, 410, 742 S.E.2d 535, 542 (2012) (finding no breach of fiduciary duty because "any confidence that Plaintiff reposed in [employee] consisted of nothing more than relying on him to competently perform his assigned duties"). Rather, "where an employee is neither an officer nor a director, extraordinary circumstances are necessary to impose a fiduciary duty arising out of the employment relationship." *Southeast Air Charter, Inc. v. Stroud*, 2015 NCBC LEXIS 82, at *16 (N.C. Super. Ct. Aug. 17, 2015) (citing *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708). These "extraordinary circumstances" are present when an employer is "subjugated to the improper influences or domination of his employee." *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708; *see also DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, at *21–22 (N.C. Super. Ct. May 12, 2015) (holding that the plaintiff failed to allege "the extraordinary or special type of employer-employee relationship that gives rise to a fiduciary duty" because the facts pleaded did not "allege that Thagard enjoyed the sort of domination or influence over DSM that our courts have found necessary to create a fiduciary duty"). For example, the special circumstance of a fiduciary

relationship can arise "'when [the employee] figuratively holds all the cards—all the financial power or technical information.'" *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 621, 730 S.E.2d 763, 767 (2012) (quoting *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 348 (4th Cir. 1998)).

47. Preliminarily, for the reasons noted earlier in this Order and Opinion, the Court will not consider Defendants' argument that Christopher could not have owed fiduciary duties to Breakthrough Cary because his employment was with Breakthrough PT and not Breakthrough Cary. Defendants allege that Breakthrough PT is "affiliated with Breakthrough Cary" and "is a part of the overall Breakthrough [PT] practice." (ECF No. 59 at CC, ¶ 2.) The issue of whether Breakthrough Cary and Breakthrough PT should be treated as one and the same should be determined after further development of the facts in this matter.

48. Defendants do not allege that Christopher was a manager, officer, or director of Breakthrough Cary. Rather, Defendants allege only that Christopher was an employee of Breakthrough Cary with management responsibilities including some "that otherwise would be performed by the manager of [Breakthrough Cary]." (*Id.* at ¶¶ 8, 34.) However, the allegations come nowhere close to the level necessary to describe the type of managerial authority that would place Christopher in a position of domination and influence over Breakthrough Cary. While Defendants allege that Christopher "held a position of trust and confidence with Breakthrough Cary giving rise to fiduciary duties to the company," they do not allege any facts showing that he dominated or influenced the company, or otherwise held "all the cards—all

the financial power or technical information." *Crumley & Assocs., P.C.*, 219 N.C. App. at 621, 730 S.E.2d at 767 (quotation omitted); s*ee also Abbitt*, 201 N.C. at 598, 160 S.E. at 906 (finding that a fiduciary relationship only exists where it is shown that one party was in a position of dominance and influence over the other). To the contrary, Defendants allege that Benz was the manager of Breakthrough Cary, and do not allege that Benz lacked access to financial and other information necessary to oversee the company's business.

49. The facts alleged in Defendants' Counterclaim do not support Defendants' allegation that Christopher owed fiduciary duties to Breakthrough Cary. Accordingly, Plaintiffs' motion to dismiss Breakthrough Cary's counterclaim for breach of fiduciary duty should be GRANTED.

*D. Defamation and Slander Per Se*

50. Breakthrough Cary, Confluent, and Benz assert a claim for defamation and slander per se against Christopher. (ECF No. 59 at CC, ¶¶ 42–48.) In support of the claim they allege "[u]pon information and belief . . . in November 2017, Dr. Dunn made representations to various employees about alleged embezzlement by these parties." (*Id*. at ¶ 20.) Plaintiffs argue that Defendants' allegation amounts to no more than a legal conclusion, is too vague to satisfy the pleading standard for defamation, fails to identify the specific statement made by Christopher needed to serve as the basis for their slander *per se* claim, and, finally, that to the extent Defendants' claim is based on statements about Defendants' overcharging of

Plaintiffs for expenses, the statements would be true and therefore not defamatory or slanderous. (ECF No. 62, at pp. 12–13.)

51. To state a claim for defamation, a plaintiff must allege that the defendant made false, defamatory statements concerning the plaintiff, which were published to a third person, thereby causing injury to the plaintiff's reputation. *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002). "[P]ublications or statements which are susceptible of but one meaning, when considered alone without innuendo, colloquium, or explanatory circumstances, and that tend to 'disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided' are defamatory *per se*." *Andrews v. Elliot*, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993) (quoting *Flake v. Greensboro News Co.*, 212 N.C. 780, 786, 195 S.E. 55, 60 (1938)). Statements constituting slander *per se* include oral statements to a third party which amount to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease. *Boyce & Isley, PLLC*, 153 N.C. App. at 29–30, 568 S.E.2d at 898 (quotations omitted).

52. When pleading a claim for defamation, the alleged defamatory statements made by the defendant must be identified "with sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84, 266 S.E.2d 861, 866 (1980); *see also Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 111, at *15 (N.C. Super. Ct. Dec. 1, 2017) (stating

that claims for defamation are subject to heightened pleading requirements and must be recited in the complaint "verbatim or with sufficient particularity to enable the court to determine whether the statement was defamatory" (citation and quotations omitted)). This court has interpreted the heightened pleading standard to require the claimant to allege "'who said what to whom, as well as when and where the defamatory statements were made.'" *Addison Whitney, LLC*, 2017 NCBC LEXIS 111, at *15 (quoting *Gosnell v. Reid*, No. 5:14CV179-RLV, 2015 U.S. Dist. LEXIS 96878, at *21 (W.D.N.C. July 24, 2015), *aff'd by Gosnell v. Catawba Cty.*, 646 F. App'x 318 (4th Cir. 2016)). Where such particularity is lacking, courts will dismiss claims for defamation for failure to state a claim. *See id.* at *15–17 (dismissing defendants' counterclaim for defamation because they failed to identify who made the allegedly defamatory statements, who the statements were made to, or when or where the statements were made); *Izydore v. Alade*, 242 N.C. App. 434, 446, 775 S.E.2d 341, 350 (2015) (affirming dismissal of plaintiff's defamation claims because plaintiff failed "to identify with any degree of specificity the allegedly defamatory remarks made by [defendants], either specifically or in substance").

53. The Court concludes that Defendants have sufficiently alleged a claim for defamation and slander per se to survive the motion to dismiss. Again, while the allegations underlying this claim are not a model of particularity, Defendants allege that Christopher made the alleged defamatory statements in November 2017 to other employees of Breakthrough Cary. In addition, Defendants allege that Christopher made statements "accus[ing]" Breakthrough Cary, Confluent, and Benz "of

embezzlement." (ECF No. 59 at CC, ¶ 43.) This satisfied the requirement that the defamatory statement be made with "sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts*, 47 N.C. App. at 84, 266 S.E.2d at 866. Furthermore, a false statement that a party has embezzled can be interpreted as "an accusation that the plaintiff committed a crime involving moral turpitude" or "an allegation that impeaches the plaintiff in his trade, business, or profession." *Boyce & Isley, PLLC*, 153 N.C. App. at 29–30, 568 S.E.2d at 898.

54. Plaintiffs' argument that Defendants' defamation claim fails because the alleged statements by Christopher were true bears little consideration. Defendants have alleged that the statements were false. (ECF No. 59 at CC, ¶¶ 20, 43.) In support of their argument Plaintiffs claim that "[e]veryone admits that Breakthrough Cary was overcharged expenses to some extent; the amount of those overcharges is what is in dispute." (ECF No. 62, at p. 13.) However, there is no allegation in the counterclaims that the statements were true, or any facts pleaded from which the Court could conclude that they were true, and Plaintiff does not direct the Court to any such allegations. Plaintiffs' argument must fail.

55. Accordingly, since Defendants have pleaded their counterclaim for defamation and slander *per se* with sufficient particularity, Plaintiffs' motion to dismiss Defendants' claim for defamation and slander *per se* should be DENIED.

## III. CONCLUSION

56. THEREFORE, IT IS ORDERED that the Motion is GRANTED, in part, and DENIED, in part, as follows:

1. Plaintiffs' motion to dismiss Defendants' counterclaim for conversion is GRANTED.

2. Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the employment contract (Count I) for failure to state a claim is DENIED.

3. Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the confidentiality provision in the APA (Count I) is DENIED.

4. Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the Billing Agreement (Count I) is GRANTED.

5. Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the Operating Agreement (Count I) is DENIED.

6. Plaintiffs' motion to dismiss Breakthrough Cary's counterclaim for breach of fiduciary duty (Count II) is GRANTED.

7. Plaintiffs' motion to dismiss Defendants' counterclaim for defamation and slander *per se* (Count III) is DENIED.

8. Plaintiffs' motion to dismiss Defendants' counterclaim for declaratory judgment (Count IV) is DENIED.

SO ORDERED, this, the 10th day of December, 2018.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases